No. 23-1843

# United States Court of Appeals
# For the First Circuit

SOPHIA ZHOU, individually and on behalf
of all others similarly situated,

*Plaintiff-Appellant*,

NICHOLAS LUONGO, individually and on behalf of all others similarly
situated; YICHUN XIE, individually and on behalf of all others similarly
situated; GREGORY HATHAWAY, individually and on behalf of all others
similarly situated; OSCAR GUZMAN-MARTINEZ, individually and on
behalf of all others similarly situated,

*Plaintiffs*,

v.

DESKTOP METAL, INC.; RIC FULOP; ALI EL-SIBLANI;
MICHAEL JAFAR,

*Defendants-Appellees*,

JAMES HALEY,

*Defendant*.

Appeal from the U.S. District Court for the District of Massachusetts
Honorable Indira Talwani / Nos. 1:21-cv-12099-IT

## APPELLANT'S REPLY BRIEF

Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Lucas E. Gilmore
HAGENS BERMAN SOBOL
SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
lucasg@hbsslaw.com

*Attorneys for Plaintiff-Appellant Sophia Zhou,*
*Individually and on Behalf of All Others Similarly Situated*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................1

II.    ARGUMENT ..................................................................................... 3

    A.     The opposition to the motion to dismiss did not
        forfeit Zhou's scheme liability claims under SEC
        Rule 10b-5(a) and (c)................................................... 3

    B.     Zhou adequately alleges the contested elements of
        scheme liability under SEC Rule 10b-5(a) and (c)...................... 8

    C.     When Zhou's allegations are taken as true, rather
        than how Defendants would recast them, the
        complaint pleads false or misleading
        representations and material omissions...................................12

    D.     Defendants fail to show that El-Siblani, the
        dominant corporate figure at Desktop Metal, is not a
        maker of statements for Exchange Act Section 10(b)...............19

    E.     Scienter is alleged as to all Defendants, including
        Desktop Metal as the culpable corporate entity. ...................... 20

III.   CONCLUSION ................................................................................... 29

CERTIFICATE OF COMPLIANCE.................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.,*
1 F.4th 687 (9th Cir. 2021) .................................................... 5, 9

*Arkansas Public Emp. Ret. Sys. V. Bristol-Myers Squibb Co.,*
28 F.4th 343 (2d Cir. 2022).....................................................15

*Azurity Pharms., Inc. v. Edge Pharma, LLC,*
45 F.4th 479 (1st Cir. 2022).....................................................16

*Barba v. Seung Heun Lee,*
2010 WL 11515658 (D. Ariz. Aug. 25, 2010) ........................... 5

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ................................................................. 9

*In re Boston Sci. Corp. Sec. Litig.,*
686 F.3d 21 (1st Cir. 2012)..................................................... 24

*Brennan v. Zafgen, Inc.,*
853 F.3d 606 (1st Cir. 2017) .................................................. 22

*In re Cabletron Sys., Inc.,*
311 F.3d 11 (1st Cir. 2002).......................................... 22, 23, 28

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.
Waters Corp.,*
632 F.3d 751 (1st Cir. 2011) .................................................. 27

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap
Mktg. & Sales Pracs. Litig.,*
2013 WL 1124081 (D.N.H. 2013) ...........................................16

*Curet-Velázquez v. ACEMLA de Puerto Rico, Inc.,*
656 F.3d 47 (1st Cir. 2011) .......................................................7

*Devlin v. Scardelletti,*
536 U.S. 1 (2002) .....................................................................7

*In re Eletrobras Sec. Litig.,*
  245 F. Supp. 3d 450 (S.D.N.Y. 2017) ....................................................... 11

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.,*
  778 F.3d 228 (1st Cir. 2015) ..................................................................... 25

*Galena Biopharma, Inc. Sec. Litig.,*
  117 F. Supp. 3d 1145 (D. Or. 2015) .......................................................... 11

*Global Network Commc'ns, Inc. v. City of New York,*
  458 F.3d 150 (2d Cir. 2006) ........................................................................ 3

*Indiana Pub. Ret. Sys. v. AAC Holdings, Inc.,*
  2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) ....................................... 11

*IOM Corp. v. Brown Forman Corp.,*
  627 F.3d 440 (1st Cir. 2010) ....................................................................... 8

*Janus Cap. Grp., Inc. v. First Derivative Traders,*
  564 U.S. 135 (2011) ............................................................................ 20, 24

*Lorenzo v. Sec. & Exch. Comm'n,*
  139 S. Ct. 1094 (2019) ................................................................................ 7

*Lucia v. Prospect Street High Income Portfolio, Inc.,*
  36 F.3d 170 (1st. Cir. 1994) ...................................................................... 18

*Matrixx Initiatives, Inc. v. Siracusano,*
  563 U.S. 27 (2011) ........................................................................ 3, 12, 19

*Medtronic, Inc. v. Lohr,*
  518 U.S. 470 (1996) ................................................................................... 16

*Metzler Asset Mgmt. GmbH v. Kingsley,*
  928 F.3d 151 (1st Cir. 2019) ......................................................... 26, 27, 29

*In re Mindbody, Inc. Sec. Litig.,*
  489 F. Supp. 3d 188 (S.D.N.Y. 2020) ......................................................... 7

*Mississippi Public Emps.' Ret. Sys. v. Boston Scientific Corp.,*
  523 F.3d 75 (1st Cir. 2008) ........................................................... 21, 22, 27

*Mitchell v. Muncie Cmty. Sch.,*
  2016 WL 3031084 (S.D. Ind. May 27, 2016) ............................................ 5

*New Jersey Carpenters Pension & Annuity Funds v. Biogen
IDEC Inc.*,
537 F.3d 35 (1st Cir. 2008) ..................................................... 28

*New York City Emps.' Ret. Sys. v. Berry*,
616 F. Supp. 2d 987 (N.D. Cal. 2009) ................................... 11

*San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*,
687 F.3d 465 (1st Cir. 2012) ..................................................... 6

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977) ..................................................................10

*Shash v. Biogen, Inc.*,
84 F.4th 1 (1st Cir. 2023) ........................................................18

*Singh v. Cigna Corp.*,
277 F. Supp. 3d 291 (D. Conn. 2017) ............................... 16, 17

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012) ....................................7

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
552 U.S. 148 (2008) ..................................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ............................................21, 22, 27, 28

*In re Tupperware Brands Corp. Sec. Litig.*,
2023 WL 5091802 (11th Cir. 2023) ......................................... 8

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991) ..............................................................15

*West Virginia Pipe Trades Health & Welfare Fund v.
Medtronic, Inc.*,
57 F. Supp. 3d 950 (D. Minn. 2014) ...................................... 11

*Yan v. ReWalk Robotics Ltd.*,
973 F.3d 22 (1st Cir. 2020) ..................................................... 26

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B) .....................................................19

**Other Authorities**

17 C.F.R. § 240.10b-5(b) .................................................................................19

# I.    INTRODUCTION

Defendants fail to grapple with the confidential witness accounts of top corporate official El-Siblani's fraudulent manufacturing activity knowingly violating U.S. Food and Drug (FDA) regulations.  When the complaint is considered for what is actually alleged, Lead Plaintiff-Appellant Sophia Zhou states viable claims for scheme liability and false or misleading representations under all three subparts of SEC Rule 10b-5.[1]

This action concerns two flagship dental products crucial to Desktop Metal's success.  As to both, the facts alleged are particularized and deeply troubling, not "isolated product issues."  Brief of Defendants-Appellees ("AAB") at 1, Doc. No. 00118141104 (May 6, 2024).

When Desktop Metal could not meet the demand for the dental resin Flexcera—in part by misrepresenting its attributes—Defendants chose to gamble with the health of patients.  Defendant El-Siblani instructed employees to use batches of resin that Defendants *knew* did not comply with FDA regulations.  In a warehouse, employees affixed false labels stating exactly the opposite of what was true and shipped the product to

---

[1] Defined terms are the same as those used in Appellant's Opening Brief ("AOB"), Doc. No. 00118116839 (Mar. 6, 2024).  Unless otherwise specified, internal quotation marks, citations, and the like within quoted material are omitted.

unsuspecting dentists.  Then, when problems arose with the PCA 4000 printer, and the sales team raised concerns with management, El-Siblani overruled their objections and directed them to keep pushing the product— even though it had not passed internal testing and was not FDA-compliant. Yet, among the challenged representations, Defendants cavalierly told the market that Desktop Metal adhered to FDA regulations.

The misconduct alleged is, by its nature, intentional.  It is a story of highly regulated medical devices, where patient safety and FDA compliance are paramount, being treated in a laissez faire way that a host of laws forbid.  And it is an inherently credible story.  It comes primarily from former employees willing to speak about what they saw and heard, including the whistleblower at Desktop Metal who brought the noncompliance to light.

To thwart these allegations at the pleading stage, Defendants offer diversionary arguments.  The scheme claims under Rule 10b-5(a) and (c) were not forfeited and are adequately alleged.  Whether 10% noncompliant Flexcera, fraudulently marketed as FDA-compliant, is somehow immaterial is for the trier of fact.  On a motion to dismiss, it is enough that no reasonable investor would go to the dentist if told there was a 10% chance a retainer or denture would not comply with FDA regulations.  Had they

known, investors would not have purchased stock in a highly regulated company led by an executive willing to engage in brazen violations of FDA medical device regulations.

Defendants misled the market about both Flexcera and the PCA 4000, and did so deliberately. This is not a case of "corporate mismanagement." AAB at 3, 42. The dismissal should be reversed.

## II.   ARGUMENT

In challenging the complaint, Defendants improperly urge inferences in their favor. Although "plausible opposing inferences" are considered on scienter, this exceptional inquiry does not apply to other securities fraud pleading requirements. *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46-48 (2011). Defendants overlook that "[t]he purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

**A.    The opposition to the motion to dismiss did not forfeit Zhou's scheme liability claims under SEC Rule 10b-5(a) and (c).**

To review briefly, Zhou alleges two components to Defendants' unlawful scheme.

*First*, Defendants produced Flexcera resin known to be non-FDA-compliant and shipped it for patient use with false labels indicating FDA compliance.  This was not a one-time event.  The false labeling and shipping went on for six months at a warehouse facility in Michigan.  Directing this misconduct, Defendant El-Siblani instructed that the same labels be used as those for compliant products.  AOB at 13-15.  *Second*, Defendants directed their sales team push the PCA 4000, even though they knew the PCA 4000 had not passed internal testing and could not cure Flexcera resin effectively.  When his sales team pushed back, El-Siblani gave an unequivocal order: "This is the one I am telling you to sell, so do it." *Id.* at 15-17.  Dental customers soon reported that the resin was not curing properly—the infamous gummy retainers.  *Id.* at 17.

These allegations are corroborated by, indeed stem from, former employees with direct knowledge of wrongdoing at Desktop Metal.  *Id.* at 13-17.  The confidential witnesses include the internal whistleblower FE-5, viewed by other former employees as a line for communication with management on these issues.  *Id.* at 15; *see* JA116-20¶¶130-43; JA132-33¶¶180-82; JA176-77¶¶241-45.  By Defendants' own description, investors were harmed.  When Desktop Metal's noncompliance with FDA regulations

became public, investors saw the value of their shares drop 9.2% and then 15% on just three trading days.  AAB at 8-9.

As they must, Defendants acknowledge that "the complaint occasionally references an alleged scheme." *Id.* at 20.  So they repeatedly insist they moved to dismiss the complaint "in full" and "in its entirety." *Id.* at 19-20, 21 n.2.  But nothing is cited for this assertion; it is *ipse dixit*. Defendants cannot elude the record they created by moving to dismiss only Zhou's misrepresentation claims under SEC Rule 10b-5(b).  AOB at 20.

Defendants did not carry their initial burden under Rule 12(b)(6).  On a motion to dismiss, the party presentation doctrine—ignored by Defendants—is alive and well.  *Id.* at 24-26.  Especially given the limits on dismissal at the pleading stage, district courts "will not make arguments for Defendants that they have not specifically raised." *Mitchell v. Muncie Cmty. Sch.*, 2016 WL 3031084, at *7 (S.D. Ind. May 27, 2016); *see also Barba v. Seung Heun Lee*, 2010 WL 11515658, at *13 n.21 (D. Ariz. Aug. 25, 2010).

Defendants fail to grapple with *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021).  The same posture there recently caused the Ninth Circuit to reinstate erroneously dismissed scheme claims under Rule 10b-5(a) and (c).  AOB at 25-26.  In Defendants' words, as here, *Alphabet* also

involved "a targeted motion to dismiss" not challenging the "scheme-related allegations." AAB at 21 n.3.

Seeking to shift their burden, Defendants argue that "Plaintiff forfeited her scheme-liability theory by not raising it in *opposition* to Defendants' motion to dismiss." *Id.* at 14 (emphasis added); *see also id.* at 20, 22 (same argument). But in opposing Defendants' motion, Zhou raised the issue. After Defendants declined to challenge the scheme claims in their motion to dismiss, she flagged those claims in a supplemental brief and more prominently at oral argument. AOB at 20. Along with the complaint itself, making scheme allegations, this was enough to preserve those claims.

The lone case cited by Defendants for waiver does not displace the usual role of party presentation. In *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465 (1st Cir. 2012), this Court held that an argument was waived because the party opposing dismissal "failed to develop" it. *Id.* at 492. *San Gerónimo* did not involve the purported forfeiture of a cause of action called to the District Court's attention before dismissal.

Contrary to Defendants' characterization, the District Court issued no "decision" that Zhou's scheme liability claims were "forfeited." AAB at 22.

It could not have.  The "waiver of objections below" is for an appellate court.  *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002).  Defendants' cited authority is again off-point.  *Curet-Velázquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 54 (1st Cir. 2011) (arguments "not properly developed before a magistrate judge are deemed waived").

In her opposition memorandum, Zhou did not refer specifically to Rule 10b-5(a) and (c), but this is the only thing she did *not* do to identify an argument, again, that Defendants did not make.  Forfeiture or waiver might be warranted if "the entire 'conduct' or 'scheme' complained of is the dissemination of misleading information"—a thin distinction calling for more precision in the complaint.  *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 217 (S.D.N.Y. 2020) (dismissing scheme claims as inadequately pled).  As discussed further below, however, Zhou alleges "deceptive acts committed *in addition* to any misleading statements or omissions."  *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012) (scheme claims alleged but dismissed on other grounds) (emphasis added).  Both factually and legally, Zhou's scheme claims under subparts (a) and (c) overlap with her misrepresentation claims under subpart (b), but are unavoidably distinct and should not have

been dismissed.  *See Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1101-03 (2019).

Defendants do not dispute that affirmance is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on *any* viable theory." *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 446 (1st Cir. 2010) (emphasis added).  In keeping with this principle, if the complaint needs to reference Rule 10b-5(a) and (c) in particular, amendment would be more consistent with justice.  A case cited by Defendants confirms there should be at least "one chance to replead before dismissing a complaint with prejudice"—although the characterization does not fit here—"on shotgun-pleading grounds." *In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at *8 (11th Cir. 2023) (affirming dismissal of scheme claims because "class shareholders have had multiple opportunities to amend").

With scheme liability now fully briefed, however, a procedural remand would be pointless.  Zhou's scheme liability claims should be decided on the merits.

**B.    Zhou adequately alleges the contested elements of scheme liability under SEC Rule 10b-5(a) and (c).**

To the limited extent addressing the substance of the scheme allegations, Defendants' arguments miss the mark.

Defendants say the scheme allegations "fail for resting on the same alleged misstatements that make up the subsection (b) theories." AAB at 24. If this description accurately reflected the record, Defendants' motion to dismiss would have made this argument. *See Alphabet*, 11 F.4th at 709. As summarized above, Zhou's complaint is broader and deeper. Defendants cannot elude her allegations, apart from material misrepresentations, of a scheme to defraud. AOB at 12-17, 26-27, 33-34 (citing complaint paragraphs).

Defendants argue that "Plaintiff's second alleged scheme"—pushing the PCA 4000 despite its compliance issues and performance problems— "fails for lack of reliance." AAB at 25. According to Defendants, the "*Basic* presumption[2] (which allows courts to presume reliance in public-misstatement cases) does not apply when the deceptive acts were not communicated to investors." *Id.* at 26. This argument proves too much and misapprehends reliance for scheme liability.

Had Defendants' scheme to push the PCA 4000 been public, it would not have been a scheme. As the Supreme Court put it, "nondisclosure is usually essential to the success of a manipulative scheme." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977).

---

[2] *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

For a contrary conclusion, Defendants rely on *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148 (2008), but it does not have the reach they attribute to it. The Supreme Court rejected a scheme claim arising from conduct presented to the public *only* through a public statement, which also served as the basis for a companion misrepresentation claim. *Id.* at 166-67. The case in substance was about the misrepresentation, not any distinct scheme. On these facts, *Stoneridge* reiterated that there must be, for scheme liability and other Rule 10b-5 violations, a "proximate relation to the investors' harm" for reliance grounded on the *Basic* presumption. *Id.* at 158-59. The "deceptive acts" cannot be "too remote to satisfy the requirement of reliance." *Id.* at 161.

As interpreted by lower courts applying Rule 10b-5(a) and (c), *Stoneridge* does not sweepingly prohibit scheme liability claims where the scheme, as ordinarily occurs, is concealed. If that were so, then subparts (a) and (c) would have no force or effect.

Focusing on the nexus between the scheme and public revelations, district courts have phrased the inquiry in varied but consistent terms. The *Basic* presumption of reliance applies where corporate officials, alleged to have engaged in the scheme, "'presented a deceptive public-facing cover that would be reflected in share prices and relied on by investors.'" *Indiana*

*Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2023 WL 2592134, at \*20 (M.D. Tenn. Feb. 24, 2023) (quoting *In re Firstenergy Corp.*, 2022 WL 681320, at \*27 (S.D. Ohio Mar. 7, 2022)).

Here, Defendants' public-facing cover was a series of related misrepresentations centered around two products: dental resin (Flexcera) along with a supposedly superior printer to cure it (PCA 4000). One could not succeed without the other and, for Desktop Metal, the two together were supposed to make a splash. AOB at 9-12. As other district court decisions illustrate, this factual nexus between the scheme and what Defendants told the market about the PCA 4000 triggers the *Basic* reliance presumption at the pleading stage.[3]

Defendants try to reframe Zhou's grievance as alleging that their scheme, and misrepresentations, duped consumers but not investors. AAB at 15, 23-24, 34. Defendants identify no allegations inadvertently pleading

---

[3] *See also New York City Emps.' Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 997-98 (N.D. Cal. 2009) (emphasizing defendant's "level of responsibility" and that the "scheme was eventually revealed to the investing public"); *West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 57 F. Supp. 3d 950, 982 (D. Minn. 2014) (scheme "had another way of reaching the public"); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 472 (S.D.N.Y. 2017) (scheme "made it 'necessary or inevitable' that falsehoods on the part of [the company] would result"); *Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1191-99 (D. Or. 2015) (quoting *Santa Fe* and denying motion to dismiss).

a consumer fraud action—because there are none.  *Id.* at 24 (citing JA146-47¶202).  In any event, this presents a false choice.  Consumers and investors alike share the same keen interest in product quality and whether the seller has misrepresented product attributes to induce sales.  If the public was misled on the capabilities of Flexcera and the PCA 4000, then investors who purchased Desktop Metal stock were misled—in addition to dentists and their patients.

**C.    When Zhou's allegations are taken as true, rather than how Defendants would recast them, the complaint pleads false or misleading representations and material omissions.**

To show a violation of Exchange Act Section 10(b) and Rule 10b-5(b), Zhou must allege "a material misrepresentation or omission by the defendant."  *Matrixx*, 563 U.S. at 37.  Defendants portray the complaint as alleging only "manufacturing issues" with Flexcera.  AAB at 2, 15, 29-30, 41.  This sounds technical, maybe even innocuous, but it fails to take the allegations as true and eludes what the case is about.  Among Zhou's allegations, at El-Siblani's direction, employees poured Flexcera known to be noncompliant with FDA regulations into bottles for sale to unsuspecting customers in the dental industry.  AOB at 14.  The misleading character of Defendants' representations about Flexcera, the PCA 4000, and Desktop

Metal's regulatory compliance is alleged in granular detail.  *See, e.g.,* JA116-21¶¶128-48; JA126-29¶¶162-68.

Defendants do not dispute, because there is no straight-faced argument, that if proved, this is jarring misconduct.  Health care in the United States is among the best in the world because patients (and investors) rely on FDA compliance to ensure that medical devices are safe. If device manufacturers routinely mixed compliant and noncompliant products, concealing this subterfuge, a doctor's visit involving FDA-approved devices would become a roll of the dice.

Using noncompliant Flexcera and altering labels—to state the opposite of the truth—is also deliberate misconduct.  Illustrated another way, the "manufacturing issues" giving rise to this action include the following:

 

Defendants do not contest that compliance with FDA regulations is, as a general proposition, highly material to investors.  To counter the

conclusion that their misrepresentations concerning compliance were false or misleading, Defendants offer untenable arguments.

As a prominent theme, Defendants say they never promised "perfect compliance" or "full compliance with every regulation 100% of the time." AAB at 2, 15, 25, 31, 33. They point to this disclosure: "Our failure to secure clearances or approvals or comply with regulations could have an adverse impact on our business and reputation and subject us to lost research and development costs, withdrawal of clearance/approval, operating restrictions, liabilities, fines, penalties and/or litigation." JA170; *see* AAB at 32.

Defendants' boilerplate assurance, buried in SEC filings, stated that noncompliance with FDA regulations "could have" adverse consequences. A reasonable investor knows this already and, when it comes to medical devices, one should hope so. Defendants' disclosures did not state that Desktop Metal would not only "cut corners" but obliterate them. AAB at 17, 51. Less than 100% compliance is not a license to mix good and bad resins in a warehouse.

In the statements challenged, Defendants repeatedly told the market that the industry standard was complete regulatory compliance and, moreover, Desktop Metal would make every effort to satisfy it. AOB at 39

(citing complaint).  Defendants assert that these representations were "literally true."  AAB at 29.  But the legal touchstone is not whether the statements were excusably short of perfection—a standard no one can satisfy—but misleading.  "The veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers."  *Arkansas Public Emp. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022); *see also Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991) ("not every mixture with the true will neutralize the deceptive").

Here, given Defendants' misconduct and the known flaws hobbling both Flexcera and the PCA 4000, Desktop Metal's statements regarding regulatory compliance were misleading.  Far from a "mismatch," AAB at 30, the contrast between what Defendants told the market and the true state of affairs at Desktop Metal is stark and, as a result, the falsity pleading requirement is satisfied.

Defendants offer an exegesis on the FDA approval process under Section 510(k) of the Food, Drug, and Cosmetic Act.  AAB at 6-7 & n.1, 9, 15, 29-30.  For several reasons, the specifics of FDA regulation, such as the difficulty the FDA would face (or not) in revoking Flexcera's 510(k) clearance, are irrelevant to this appeal.

The FDA's expertise does not displace generally applicable laws, such as the Exchange Act. *See Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 500-02 (1st Cir. 2022) (discussing primary jurisdiction doctrine). This is because "[t]he FDA does not have technical expertise related to questions of fraud and deceit. Courts, by contrast, routinely determine whether past conduct or statements were false or misleading." *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Pracs. Litig.*, 2013 WL 1124081, at *7 (D.N.H. 2013).

Contrary to Defendants' assumption, there is no legal firewall separating FDA regulation and private enforcement of the securities laws. The two, as here, often advance the same goals. Zhou's private enforcement action furthers the congressional aim, motivating the FDA statute, to protect "the safety of those who use medical devices." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 491 (1996). As put in a decision cited by Defendants, "the existence of 'ongoing and substantial' violations of regulations that are left undisclosed can lead to a material misstatement or omission if a reasonable investor would consider such information important." *Singh v. Cigna Corp.*, 277 F. Supp. 3d 291, 313 (D. Conn. 2017).

When the facts are taken as true, relief does not turn on anything the FDA said or did. Zhou makes no fraud allegations grounded on the FDA's

issuance of Flexcera's 510(k) clearance.  Nor does her case rest on any action taken by the FDA after the true state of affairs came to light in November 2021.

To review, Zhou's fraud claims are not factually complicated.  She alleges two categories of false or misleading statements:

- In light of the bottling warehouse where fake labels were attached, Defendants misled investors that the Flexcera they were sending to market complied with FDA regulations (AOB at 35);

- Even though the PCA 4000 was not strong enough to cure Flexcera properly and not cleared by the FDA, Defendants misrepresented that Flexcera resins could achieve specific physical attributes using EnvisionTEC hardware (AOB at 39).

As to the second category of statements, Defendants assert the PCA 4000 was too inconsequential to be material to investors.  AAB at 3, 16, 37-38.  Given its nexus to the success and attributes of Flexcera, however, statements regarding the PCA 4000 fall under the practical presumption that materiality is not decided on a motion to dismiss.  As numerous courts recite, the materiality determination calls for inferences that are "'peculiarly ones for the trier of fact.'"  *Lucia v. Prospect Street High*

*Income Portfolio, Inc.*, 36 F.3d 170, 176 (1st. Cir. 1994) (quoting *TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)).

According to Defendants, "Plaintiff has not pointed to a single statement from Defendants suggesting that the PCA 4000 was responsible for achieving any of Flexcera's touted qualities." AAB at 15-16; *see also id.* at 2-3, 35 (same argument). This is incorrect; an illustrative representation is discussed in the opening brief. AOB at 41-42; JA159¶218. Although Defendants try to downplay the investor presentation linking the two products, the Exchange Act does not allow one free bite. One materially misleading representation suffices to pursue Exchange Act claims on the merits. *See, e.g.*, *Shash v. Biogen, Inc.*, 84 F.4th 1, 6 (1st Cir. 2023) (reversing as to "one particular statement for which we conclude that investors' pleadings adequately stated a claim").

Even more fundamentally, Defendants' argument takes a myopic view of Rule 10b-5(b). Its proscriptions are not limited to affirmative misrepresentations. When Defendants spoke on the attributes of Flexcera and the PCA 4000, they had a duty *not* to "omit" a "material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). Among the omitted material facts, investors would have wanted to know,

but were never told, that El-Siblani directed employees to ship noncompliant resin and ordered the sales team to push a device, the PCA 4000, that did not pass internal testing and also was not FDA-compliant.

Defendants contend briefly that two paragraphs in the detailed complaint are "non-actionable puffery." AAB at 35 (citing JA149¶206 and JA157-58¶217). This argument falters for the simple reason that Defendants take issue with only snippets of those paragraphs. *Id.* The complaint is considered "as a whole" for whether it states a claim, not by slicing and dicing. *Matrixx*, 563 U.S. at 47.

Because materially misleading statements or omissions are alleged, Zhou has satisfied the Exchange Act's falsity pleading requirement. 15 U.S.C. § 78u-4(b)(1)(B).

**D. Defendants fail to show that El-Siblani, the dominant corporate figure at Desktop Metal, is not a maker of statements for Exchange Act Section 10(b).**

Defendants blur two separate issues: whether El-Siblani made materially misleading statements; and, if yes, whether he made those statements with scienter. AAB at 47-51. As before, Zhou distinguishes the two. AOB at 44-49, 50-52.

Before getting to scienter below, El-Siblani is a maker of statements under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135

(2011).  Defendants emphasize that he was not an identified signatory for some challenged statements.  AAB at 48-49.  As they acknowledge elsewhere, however, the inquiry is whether El-Siblani had "ultimate authority over the statement."  *Id.* at 48 (quoting *Janus*, 564 U.S. at 142).

Defendants' arguments to the contrary merely raise disputed issues of fact arising from the nature of this standard.  Ultimate authority is fact-intensive.  It is telling that Defendants identify no particular statements in the complaint where, in their view, El-Siblani cannot be considered a maker of statements *as a matter of law* at this early stage of the litigation.  *Id.* at 47-50.

The District Court agreed with Zhou that El-Siblani made challenged statements contained in Desktop Metal's 2020 Annual Report.  Add. 15, 26.  Defendants do not contest this holding.  *Janus* is no basis to affirm the dismissal.

### E.    Scienter is alleged as to all Defendants, including Desktop Metal as the culpable corporate entity.

Defendants' principal response on scienter is that Desktop Metal quickly initiated its own investigation and recall "without the FDA ever having to get involved."  AAB at 27.  By Defendants' account, these developments cannot "reflect an intent to deceive investors."  *Id.*; *see also id.* at 1, 39-40 (same argument).

As a matter of timing, however, Desktop Metal's voluntary investigation and recall occurred *after* the Zhou Class Period—the conduct constituting the fraud—between March and November 2021. JA53. The consequences for securities fraud are not negated by a self-interested attempt, after the truth comes to light, to minimize the damage. *See, e.g.*, *Mississippi Public Emps.' Ret. Sys. v. Boston Scientific Corp.*, 523 F.3d 75, 88-92 (1st Cir. 2008) (holding scienter alleged and reversing dismissal).

There is another inference to draw from the facts and it refutes Defendants' argument. Zhou plausibly alleges that Desktop Metal acted only after a whistleblower brought the issues to light in a manner that could no longer be ignored. AOB at 17-18. This explanation supports a strong inference of scienter because it is "at least as compelling as any opposing inference" favoring Defendants. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

Desktop Metal's conduct after the truth was revealed is, at most for Defendants, a tie on plausibility that goes in Zhou's favor. In holding that *Tellabs* was satisfied under similar circumstances, this Court explained: "Defendants are in a highly regulated industry and the company, it can be inferred, constantly monitors reports of patient injury and death and looks

for prompt solutions to such problems." *Mississippi Public Emps.' Ret. Sys.*, 523 F.3d at 92.

Defendants make no serious effort to address the detailed witness accounts fortifying a strong inference of scienter. AOB at 13-17. Zhou need not plead "direct evidence of scienter to avoid dismissal" because "an investor's access to such information prior to discovery will often be limited at best." *Brennan v. Zafgen, Inc.*, 853 F.3d 606, 615 n.8 (1st Cir. 2017). But the former employees here, without any discovery, provided direct evidence supporting a "cogent and compelling" inference of scienter. *Tellabs*, 551 U.S. at 323.

On this point, Defendants try to distinguish *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002), where a securities fraud complaint making similar scienter allegations was reinstated. AAB at 52 n.6. In that case, former employees provided comparable accounts of a powerful board chairman who instructed employees to "warehouse" products and write phony purchase orders for non-existent sales. *Cabletron*, 311 F.3d at 24-26. As here, "[t]he company knowingly shipped products that still had unresolved defects." *Id.* at 23.

As this Court recognized, former employees often possess "important information about corporate malfeasance" that separates "meritorious

actions" from those failing to meet the pleading standards. *Id.* at 30. The confidential witness accounts, as in *Cabletron*, "are not conclusory allegations of fraud, but specific descriptions of the precise means through which it occurred, provided by persons said to have personal knowledge of them." *Id.*

Warehouses and other similar facilities, where products are handled out of sight, have long been fertile places to facilitate corporate wrongdoing. Cases involving this type of deceit often pass the pleading stage. "Accusations of warehousing of the sort plaintiffs make here are 'very serious.'" *Id.* at 39 (quoting *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 202 (1st Cir. 1999)). As in *Cabletron*, Zhou's allegations detailing El-Siblani's central role only "add to a strong inference of scienter. The complaint alleges that [El-Siblani] specifically directed some of the fraudulent warehousing activities at the heart of the complaint." *Id.*

It is "obvious," this Court stressed in *Cabletron*, that "intentionally fraudulent conduct" in this vein supports "a strong inference of scienter." *Id.* Other First Circuit precedents are to the same effect. Scienter is adequately alleged where, as here, "witnessed discussions suggest[ed] that at the time they made the statements claimed to be misleading, the defendant officers were aware that they were withholding vital information

or at least were warned by others that this was so." *In re Boston Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012).

Understandably, then, in defending El-Siblani's conduct, Defendants emphasize *Janus* while offering little pushback on the distinct question of his scienter. AAB at 47-51. When making representations challenged under Rule 10b-5(b), and engaging in conduct alleged to violate the scheme provisions of Rule 10b-5(a) and (c), El-Siblani did so with fraudulent intent.

To deflect attention from the witness accounts, Defendants return to their theme that Desktop Metal "'repeatedly' and 'explicitly warned investors about' the risk of noncompliance with FDA regulations." *Id.* at 40 (quoting dismissal order). To be sure, "'[p]roviding warnings to investors, or otherwise disclosing potential risks, erodes inferences of scienter.'" *Id.* at 40-41 (quoting *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 58 (1st Cir. 2018)). When Zhou's allegations are taken as true, however, flouting FDA regulations to meet demand for Flexcera and to promote the PCA 4000, in the face of glaring problems with both products, is not inadvertent noncompliance that might undermine scienter.

Calling it "directly on point," AAB at 42, Defendants rely on *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228 (1st Cir. 2015). But that decision only highlights the difference between risks inherent in

FDA regulation, usually not actionable under the securities laws, and deliberate wrongdoing. *Abiomed* involved violations of restrictions on off-label marketing—meaning, who may market, not whether the device was safe to market. *Id.* at 232-33. Unlike this case, there was no dispute that the device in *Abiomed*, a heart pump, was safe for medical use. Against this backdrop, there was a lengthy "regulatory back-and-forth with the FDA" solely on off-label use. *Id.* at 244.

Here, Desktop Metal used an entirely impermissible product (nonconforming Flexcera resin) mixed surreptitiously in a warehouse and sent to unsuspecting dentists. There was no give and take with the FDA because, until a whistleblower came forward, Defendants concealed their illegal practices. A voluntary recall to minimize fallout with the FDA is not the "regulatory back-and-forth," grounded on mutual good faith, that *Abiomed* had in mind. *Id.*

Rather than off-label marketing or other conduct occurring in the open, Desktop Metal of course did not want the FDA to know in the first place. Hiding the fraud, until it could no longer be concealed, "strongly impl[ies] that defendants had reason to believe their omissions to be fraudulent." *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 41 (1st Cir. 2020).

Put another way, the "surrounding circumstances" cast Defendants' asserted remedial steps "in a more suspicious light."  *Id.*

Defendants do not dispute that the core operations inference (AOB at 51-52) is a valid basis, along with other scienter allegations, to draw the necessary strong inference of scienter.  AAB at 44.  To avoid that inference as to Defendants Fulop and Jafar here, however, Defendants misstate the law.  Citing only trial court orders, Defendants insist "the operation in question" must "constitute nearly all of a company's business before finding scienter based on the core operations doctrine."  *Id.*  Less stringently, as Defendants inadvertently acknowledge, this Court holds that the case need only involve an "important transaction."  *Metzler Asset Mgmt. GmbH v. Kingsley*, 928 F.3d 151, 165 (1st Cir. 2019); *see* AAB at 44 (appellees' brief quoting same).

Defendants admit that Fulop told the market during the class period that "the EnvisionTEC segment as a whole could eventually contribute up to 40% of the Company's overall revenue."  AAB at 45 (citing JA178¶246) (emphasis deleted).  They cite nothing for their assertion that this does not implicate a core operation.  For pleading purposes, it does, with Defendants' insistence on even more detailed allegations for later.  *See Metzler*, 928 F.3d at 165.

Relying on a trial court order and out-of-circuit authority, Defendants contend that the lack of insider stock sales "weigh[s] against a finding of scienter." AAB at 43 (quoting *Smith v. First Marblehead Corp.*, 55 F. Supp. 3d 223, 231 (D. Mass. 2014)). But the Supreme Court instructs that "the absence of a motive allegation is not fatal" because the scienter inquiry turns on "the entirety of the complaint." *Tellabs*, 551 U.S. at 325. Suspicious insider trading by top officials is a plus, but, where other allegations establish scienter, the lack of insider stock sales does not undercut a viable case. As this Court has explained, "[i]nsider trading cannot establish scienter on its own, but it can be used to do so in combination with other evidence." *Mississippi Public Emps.' Ret. Sys.*, 523 F.3d at 92; *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 760 (1st Cir. 2011) ("allegations of insider trading may offer some support for inferences of scienter").

Zhou freely admits that for scienter, she relies primarily, although not exclusively, on the witness accounts of former employees. These people have no obligation, and often no incentive, to speak with lawyers about a possible fraud. "Scienter involves wrongdoing by high-level company officials; low-level employees or consultants may well know of the wrongdoing and wish to disclose it but fear retaliation if their names appear

among the accusers." *New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 52 (1st Cir. 2008) (recognizing probative value of confidential witnesses and whistleblowers). When available, their incriminating accounts often suffice to pass the pleading stage. *See Cabletron*, 311 F.3d at 30.

Viewed collectively, Zhou's allegations compel a strong inference of scienter as to all Defendants. Scienter is challenging to allege but, the Supreme Court instructs, not impossible: "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 324.

Finally, as to corporate scienter for Desktop Metal, Defendants spend five pages pummeling a straw man. In short, they contend that Zhou seeks to attribute scienter to Desktop Mental even if *no individual defendant* has scienter. AAB at 51-55. Defendants are correct that the First Circuit reserved this issue for another day. *See Metzler*, 928 F.3d at 163. That day has not arrived, however, because this is not Zhou's argument. Instead, she contends, and Defendants do not dispute, that "if Zhou has pled scienter as to any individual Defendant, it is established for Desktop Metal, including for scheme liability claims under Rule 10b-5(a) and (c)." AOB at 55.

## III. CONCLUSION

The dismissal of Zhou's Exchange Act 10(b) and SEC Rule 10b-5

claims should be reversed.

DATED: May 28, 2024        Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By    */s/ Steve W. Berman*
      Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
lucasg@hbsslaw.com

Kevin K. Green
HAGENS BERMAN SOBOL SHAPIRO LLP
533 F Street, Suite 207
San Diego, CA 92101
Telephone: (619) 929-3340
keving@hbsslaw.com

Raffi Melanson
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
raffim@hbsslaw.com

*Attorneys for Plaintiff-Appellant Sophia
Zhou, Individually and on Behalf of All
Others Similarly Situated*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,780 words, as calculated by the word processing system used to prepare the document.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Georgia 14-point font.

DATED: May 28, 2024

_/s/ Steve W. Berman_
STEVE W. BERMAN

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Steve W. Berman*
STEVE W. BERMAN
